IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
17 FEB -3 AM 11: 39

YVETTE HOBZEK, individually and on behalf of
all others similarly situated,
                     Plaintiff,

-vs-                                      Case No. A-16-CA-1058-SS

HOMEAWAY.COM, INC., et al.,
                     Defendants.

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendants' Motion to Compel Arbitration and Stay Action [#16], Plaintiff's Response [#21] in opposition, Defendants' Reply [#22] in support, Plaintiff's Surreply [#23] in opposition, and Defendants' Limited Response to Plaintiffs' Surreply [#27] in support. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders.

### Background

Defendants HomeAway.com, Inc., VRBO.com, Inc., and Expedia, Inc. (collectively, Defendants)[1] operate an online service that allows property owners and managers to list properties for short-term rentals and communicate with users looking for such rentals. Mot. Compel [#16] at 1. Plaintiff Yvette Hobzek used Defendants' online service a number of times during the summer of 2016. Am. Compl. [#3] ¶¶ 16–38. In order to use this service, Plaintiff agreed to Defendants'

---

[1] HomeAway.com, Inc. acquired VRBO.com, Inc. in 2006 and Expedia, Inc. acquired HomeAway.com, Inc. in 2015. Am. Compl. [#3] ¶¶ 13–14.

Terms and Conditions (TACs) on three separate occasions. Defendants' records show Plaintiff clicked on "Send message," "Send email," and "Continue to payment" buttons on Defendants' website between May 30, 2016 and June 30, 2016. *Id.* ¶¶ 19–25; Mot. Compel [#16-1] (Desjardins Decl.) ¶ 5. Directly beside each button was language stating "By clicking [the button] you are agreeing to our [TACs] and Privacy Policy," with a hyperlink to Defendants' TACs and Private Policy. Desjardins Decl. ¶ 5.

The TACs contain an arbitration agreement, which provides, "**Any and all Claims will be resolved by binding arbitration, rather than in court . . . .**" *Id.* [#16-6] Ex. E (TACs) ¶ 19. The TACs also incorporate the American Arbitration Association (AAA) Rules, stating, "Arbitration will be conducted by the [AAA] under its rules, including the AAA Consumer Rules." *Id.* Further, the arbitration agreement prohibits class actions: "**Any and all proceedings to resolve Claims will be conducted only on an individual basis and not in a class, consolidated or representative action.**" *Id.*

Plaintiff filed this putative class action on September 12, 2016, alleging that one of the property owners she communicated with using Defendants' service refused to rent to her because of her race. Am. Compl. [#3] ¶ 27 (explaining when Plaintiff inquired about an available property, the property owner told her "he did not rent to '[her] kind'"). Specifically, Plaintiff claims Defendants violated her rights under § 1981 of the Civil Rights Act of 1866, Title II of the Civil Rights Act of 1964, and the Fair Housing Act (FHA). *Id.* ¶ 53. Plaintiff purports to represent herself and all others similarly situated under Rule 23 of the Federal Rules of Civil Procedure. *Id.* ¶ 39. Defendants moved to compel arbitration based on the arbitration agreement in the TACs on November 18, 2016. The motion is now ripe for the Court's review.

## Analysis

**I. Legal Standard**

Section 2 of the Federal Arbitration Act (FAA) states, "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA thereby places arbitration agreements on an equal footing with other contracts, and requires courts to enforce them according to their terms." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (internal citations omitted).

Generally, the court determines whether a party must be compelled to arbitrate her claim. *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004); *see also Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 262 (5th Cir. 2014) ("Ordinarily, whether a claim is subject to arbitration is a question for a court."). Parties, however, "can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center*, 561 U.S. at 68–69. Such an agreement is commonly referred to as a "delegation provision." *Id.* at 68. An arbitrator shall decided issues of arbitrability when (1) the parties clearly and unmistakably intended to delegate the power to decide arbitrability to an arbitrator and (2) the assertion of arbitrability is not wholly groundless. *Douglas v. Regions Bank*, 757 F.3d 460, 462–64 (5th Cir. 2014).

II.     **Application**

A.     **The Parties Demonstrated a Clear and Unmistakable Intent to Delegate Power to Decide Arbitrability to an Arbitrator.**

The Court first determines whether the arbitration agreement evinces the parties' clear and unmistakable intention to delegate the power to decide arbitrability to an arbitrator. A delegation provision "need not recite verbatim that the 'parties agree to arbitrate arbitrability' in order to manifest 'clear and unmistakable' agreement." *Hous. Ref., L.P. v. United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union*, 765 F.3d 396, 410 n.28 (5th Cir. 2014). The Fifth Circuit has held "express incorporation of the [AAA Rules] constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."[2] *Crawford*, 748 F.3d. at 262–63 (citing *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012)); *see also Cooper v. WestEnd Capital Mgmt., L.L.C.*, 832 F.3d 534, 546 (5th Cir. 2016); *Edwards v. Doordash, Inc.*, No. CV H-16-2255, 2016 WL 7852532, at *13 (S.D. Tex. Dec. 8, 2016).

Plaintiff does not dispute that she agreed to the TACs when she clicked the "Send message," "Send email," and "Continue to payment" buttons. Further, it is undisputed the TACs include an arbitration provision, stating "**Any and all Claims will be resolved by binding arbitration, rather than in court . . . .**" TACs ¶ 19. As noted above, the TACs also provide that "Arbitrations will be conducted by the [AAA] under its rules, including the AAA Consumer Rules." *Id.* This language is clear and unmistakable evidence Plaintiff and Defendants intended to delegate the power to decide arbitrability to an arbitrator. *See Crawford*, 748 F.3d at 263.

---

[2] Rule 7 of the AAA Rules states, "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope of validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."

Usually, after determining the parties clearly and unmistakably agreed to arbitrate arbitrability, the Court would address the second step of the analysis: whether the assertion of arbitrability is wholly groundless. *See Douglas*, 757 F.3d at 463–64. Plaintiff, however, argues the arbitration agreement, which of course includes the delegation provision, should not be enforced for four reasons: (1) the TACs lack consideration because "Defendants never returned a promise or performed"; (2) Defendant Expedia is not bound to the arbitration agreement because it was never a signatory to the TACs; (3) the arbitration agreement—specifically the class action waiver provision—prevents Plaintiff from effectively litigating her statutory civil rights claims under § 1981, Title II, and the FHA; and (4) the arbitration agreement is illusory because Defendants can amend the TACs at any time, without notice to Plainitff. *See* Resp. [#21] at 3–4, 6–12; Pl.'s Surreply [#23] at 4–6. Thus, the Court will turn to whether these arguments bar enforcement of the delegation provision before determining if the assertion of arbitrability is wholly groundless.

"[A] delegation provision is simply an additional, antecedent agreement that is severable from the remainder of the arbitration agreement." *Aviles v. Russell Stover Candies, Inc.*, 559 F. App'x 413, 414 (5th Cir. 2014) (quoting *Rent-A-Center*, 561 U.S. at 70–71) (internal quotations omitted). Therefore, a delegation provision may be challenged "upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* (quoting 9 U.S.C. § 2). But such challenges must be to the "delegation provision itself specifically" and not to "another provision of the contract, or to the contract as a whole." *Id.* (quoting *Rent-A-Center*, 561 U.S. at 71); *see also W.L. Doggett LLC v. Paychex, Inc.*, 92 F. Supp. 3d 593, 598 (S.D. Tex. 2015) ("Any challenge to the arbitration agreement as a whole, the contract as a whole, or a different provision of the contract should not be decided by the court; rather, such challenges must be submitted to the arbitrator to decide when

determining arbitrability pursuant to a delegation provision."); *Micheletti v. Uber Techs., Inc.*, No. 15-1001, 2016 WL 5793799, at *3 (W.D. Tex. Oct. 3, 2016) ("Unless a defendant challenges a delegation provision specifically, court must treat it as valid and enforceable under the FAA.").

In *Rent-A-Center*, for example, the plaintiff argued "the *entire arbitration agreement*, including the delegation clause, was unconscionable." 561 U.S. at 73 (quoting plaintiff's pleadings). But because the plaintiff did not challenge the delegation provision specifically, the Supreme Court held that the determination of whether the arbitration agreement was unconscionable was reserved for the arbitrator, not the court. *Id.* at 70–73; *see also Burkhaulter v. Satellites Unlimited, Inc.*, No. 3:14-CV-491, 2015 WL 11120640, at * 3 (S.D. Miss. Jan. 12, 2015) (compelling arbitration of whether the entire arbitration agreement was illusory because plaintiff failed to challenge delegation provision specifically).

Here, Plaintiff's reasons why the arbitration agreement should not be enforced are challenges to the TACs or arbitration agreement as a whole, not to the delegation provision specifically.[3] As in *Rent-A-Center*, Plaintiff's arguments only refer to the TACs or the arbitration agreement, including the class waiver provision. *See, e.g.*, Resp. [#21] at 3 ("There is absolutely *no contract* formed in this case and mere access cannot create a unilateral one.") (emphasis added); *id.* at 6 ("Defendants['] *class waiver* effectively forecloses statutory relief and is procedurally and substantively unconscionable.") (emphasis added); *id.* at 7 ("Title II . . . is not within the scope of the *arbitration terms* and relief is effectively foreclosed by the terms."); Pl.'s Surreply [#23] at 6 ("[T]he *arbitration provision* in the [TACs] is illusory and not binding . . . .") (emphasis added). In

---

[3] Because Plaintiff did not attack the delegation provision specifically, the Court need not address the parties' choice-of-law arguments. *See, e.g., Micheletti*, 2016 WL 5793799, at *4–5 (applying choice-of-law rules to determine which law governed whether the delegation clause, not the arbitration agreement as a whole, was unconscionable).

fact, Plaintiff never mentions the delegation provision in her briefing. Plaintiff's arguments, therefore, are for the arbitrator to decide. Because Plaintiff has not presented any challenges to the delegation provision specifically, and the delegation provision is clear and unmistakable evidence the parties intended to arbitrate arbitrability, the Court must compel arbitration unless the assertion of arbitrability is wholly groundless.[4]

B.   **The Assertion of Arbitrability is Not Wholly Groundless.**

Recently, the Fifth Circuit "carved out a narrow exception" to the general enforcement of clear and unmistakable delegation provisions: "[w]here the argument for arbitration is 'wholly groundless,' we refuse to enforce a delegation clause." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 202 n.1 (5th Cir. 2016) (citing *Douglas*, 757 F.3d at 464). Still, "[s]o long as there is a 'plausible' argument that the arbitration agreement requires the merits of the claim to be arbitrated, a delegation clause is effective . . . ." *Id.*; *see also W.L. Doggett*, 92 F. Supp. 3d at 599 ("Assertion of arbitrability is not wholly groundless if, on the one hand, there is a plausible and legitimate argument that the arbitration agreement covers the present dispute, and, on the other hand, a plausible and legitimate argument that it does not."). In other words, it is not the court's job to "*resolve* the parties' arbitrability arguments," but rather to determine "whether there is a *bona fide* dispute on arbitrability." *Kubala*, 830 F.3d at 202 n.1.

As explained above, Plaintiff presents four reasons why the arbitration agreement does not cover the present dispute. First, Plaintiff claims the TAC lacks consideration because "Defendants

---

[4] Both parties mention *Arnold v. HomeAway Inc. and Does 1-10*, No. 1:16-CV-00375-LY (W.D. Tex. Jan. 10, 2017), a case decided by a different judge in this district. To the extent that opinion conflicts with the instant case, *Arnold* is not binding on this Court. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011); *Blanco v. Equable Ascent Fin., LLC*, No. EP-12-CV-134-PRM, 2012 WL 2155005, at *2 (W.D. Tex. June 13, 2012).

never returned a promise or performed." *See* Resp. [#21] at 3. Defendants, however, claim they did fulfill a promise: when Plaintiff agreed to the TACs, Defendants provided her with their online services. Reply [#22] at 1.

Second, Plaintiff argues Expedia is not bound by the arbitration agreement because it is not a signatory to the TACs. Resp. [#21] at 3–4. Defendants reply that "the limitation of liability and release of claims provisions in the [TACs] create direct obligations from [Plaintiff] to Expedia." Reply [#22] at 3. Therefore, Defendants argue, Expedia is bound to the arbitration agreement as a third-party beneficiary. *Id.*

Third, Plaintiff alleges the arbitration agreement prevents her from effectively litigating statutory civil rights claims under § 1981, Title II, and FHA. Resp. [#21] at 6–12. Specifically, Plaintiff alleges the arbitration agreement forecloses her claims under those statutes because the agreement forbids class actions and the award of injunctive relief. *See, e.g., id.* at 7 ("Title II of the Civil Rights Act is an inherent class representative proceeding. It is by virtue a cohesive claim that **only** provides injunctive relief for protected class members as a whole."). Defendants respond that class waivers are enforceable in arbitration agreements even when the plaintiff brings a claim under a federal statute that permits collective actions. Reply [#22] at 2–3. Further, Defendants state the arbitration agreement permits the arbitrator to grant Plaintiff injunctive relief if she prevails. Mot. Compel [#16] at 3 (citing arbitration agreement: "[A]n arbitrator can award on an individual basis the same damages and relief as a court . . .").

Finally, Plaintiff claims the arbitration agreement is illusory because Defendants can amend the TACs at any time without notice to Plainitff. Pl.'s Surreply [#23] at 4–6. On the other hand, Defendants state "a unilateral change-of-terms provision does not make an arbitration agreement

illusory if the provision applies only *prospectively* and advance notice is provided." Reply [#22] at 5 n.2 (citing *Nelson v. Watch House Int'l, L.L.C.*, 815 F.3d 190, 193–94 (5th Cir. 2016)). The Court finds both parties' contentions regarding each of these arguments are plausible, and thus the assertion of arbitrability is not wholly groundless.

Ultimately, because the parties clearly and unmistakably intended to delegate the power to decide arbitrability to an arbitrator, and Defendants' assertion of arbitrability is not wholly groundless, the Court GRANTS Defendants' Motion to Compel. This Court will STAY this case pending a decision by the arbitrator. Should the arbitrator determine that the arbitration agreement is not enforceable or the issues raised in this case are not covered by the arbitration agreement, the parties may return to this Court to continue litigation. In the meantime, the parties are instructed to file status reports regarding the arbitration proceedings with this Court every ninety days.

## Conclusion

Accordingly,

IT IS ORDERED that Defendants HomeAway.com, Inc., VRBO.com, Inc., and Expedia, Inc.'s Motion to Compel Arbitration and Stay Case [#16] is GRANTED;

IT IS FURTHER ORDERED that this case is STAYED pending a decision by the arbitrator; and

IT IS FINALLY ORDERED that the parties shall file status reports regarding the arbitration proceedings with the Court every NINETY (90) DAYS.

SIGNED this the 31st day of January 2017.

/s/ Sam Sparks
SAM SPARKS
UNITED STATES DISTRICT JUDGE